*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TERRY MOORE, ELLEN MOORE, DAVID
O'NIONS, DIANE O'NIONS, JOELLEN
PISARCZYK, and MARVIN PISARCZYK,

UNPUBLISHED
August 27, 2020

Plaintiffs-Appellees,

v

No. 348579, 349727
Livingston Circuit Court
LC No. 17-029670-CE

GENERAL MOTORS LLC,

Defendant-Appellant.

Before: GADOLA, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

In these consolidated cases, defendant, General Motors LLC, appeals by leave granted the orders of the trial court denying in part defendant's motion for summary disposition and denying its renewed motion for summary disposition. We reverse and remand for further proceedings.

## I. FACTS

These interlocutory appeals arise from a proposed class action in which plaintiffs seek damages and injunctive relief for contamination of their residential well water. Plaintiffs, Terry and Ellen Moore, David and Diane O'Nions, and Joellen and Marvin Pisarczyk, are three couples who own or owned homes in The Oaks, a residential subdivision in Milford, Michigan. Plaintiffs allege that the well water at their Milford homes is contaminated with sodium and chloride, and that the source of the contaminants is defendant's car testing facility in Milford, known as the Milford Proving Grounds. Plaintiffs allege that the contamination was and is caused by the excessive use of de-icing road salt at the Proving Grounds.

The Milford Proving Grounds were owned by General Motors Corporation (Old GM) from 1924 until July 9, 2009. On June 1, 2009, Old GM initiated Chapter 11 bankruptcy proceedings. See *In re Motors Liquidation Co*, 585 BR 708, 716 (Bankr SD NY, 2018). Defendant, also referred to herein as New GM, purchased the Proving Grounds from the bankruptcy estate of Old GM, and since July 10, 2009, has owned and operated the Proving Grounds. Plaintiffs allege that before July 10, 2009, Old GM, and since July 10, 2009, New GM, released hundreds of thousands of tons

of de-icing salt at the Proving Grounds, resulting in extremely high concentrations of sodium and chloride in surface and groundwater at the Proving Grounds, which migrated into groundwater beneath plaintiffs' properties. The salt was used at the Proving Grounds to de-ice the extensive system of roads, parking lots, and sidewalks, and was also used in the testing facility to test the corrosive effect of the de-icing chemicals on test cars.

The parties entered into a tolling agreement on July 1, 2016, tolling as of that date the limitations period for any complaint arising from the alleged contamination. On November 30, 2017, plaintiffs initiated this action alleging that defendant violated Michigan's NREPA[1] and Michigan's EPA,[2] and also alleging fraud, negligence, trespass, and private and public nuisance.

Defendant removed plaintiffs' complaint to the Federal District Court for the Eastern District of Michigan, seeking to enforce the Sale Order entered by the federal bankruptcy court for the Southern District of New York to effectuate the sale of Old GM's assets, including the Proving Grounds, to New GM, and thereby seeking to bar plaintiffs' claims in this case. Under the terms of the Sale Order, New GM agreed to assume certain liabilities of Old GM related to the real property Old GM transferred to New GM, including liabilities arising under environmental laws, while expressly excluding certain liabilities. See *In re Motors Liquidation Co*, 585 BR at 716.

The bankruptcy court held that under its Sale Order, plaintiffs in this case are precluded from pursuing against New GM common law claims arising from Old GM's contamination of plaintiffs' groundwater. *In re Motors Liquidation Co*, 585 BR at 715-716. However, recognizing that groundwater migration from the Proving Grounds may have taken place over time, the bankruptcy court held that plaintiffs could pursue claims arising from groundwater contamination that occurred after the bankruptcy, even if the contamination was caused by Old GM prior to the bankruptcy, and could also pursue claims arising from New GM's conduct. *Id*. The bankruptcy court also held that with regard to claims for damages based on violation of statutorily-based environmental laws, New GM assumed liability only for compliance with such laws after it purchased the Proving Grounds, including liability for remediation or clean-up for contamination caused by Old GM. *Id*. at 731.

The bankruptcy court explained that although its role was not to decide the claims that were pending in this case before the federal district court, its role as "gatekeeper" was to decide what claims and allegations would get through the "gate" under the bankruptcy Sale Order. *Id*. at 723, 725. The bankruptcy court stated:

> The Court agrees with the Plaintiffs that they have sufficiently supported their independent claims against New GM with allegations that hinge on New GM conduct. For example, allegations such as those in Court XI that New GM continued contaminating the groundwater by causing releases of salt after it acquired the [Proving Grounds] in 2009, are not problematic, as they are claims independent of Old GM and that could support New GM's independent liability,

[1] Michigan's Natural Resources and Environmental Protection Act, MCL 324.101 *et seq*.

[2] Michigan's Environmental Protection Act, MCL 324.1701 *et seq*., is Part 17 of the NREPA.

regardless of Old GM's actions before the 363 Sale. Similarly, as the Court explained above, for personal injury or property damage claims based on groundwater contamination from Old GM's dumping of road salt *before* the 363 Sale, but which migrated from the Property *after* the Property was owned by New GM, the Sale Order does *not* bar such claims. Whether Michigan law recognizes claims for personal injury or property damage against a property owner . . . is an issue for the Michigan District Court, not for this Court. [*Id*. at 726.]

After the bankruptcy court issued its decision, the federal district court remanded this case to the trial court. In light of the bankruptcy court's decision, plaintiffs filed their Second Amended Complaint, alleging violations of the NREPA by New GM but relating to conduct of Old GM, alleging violations of the NREPA by New GM, and also alleging against New GM fraud, negligence, trespass, private nuisance, and public nuisance. Defendant moved for summary disposition of the Second Amended Complaint under MCR 2.116(C)(7), (8), and (10), contending that plaintiffs' claims were barred by the statute of limitations, that plaintiffs failed to comply with a statutory notice provision of NREPA, that plaintiffs lacked standing, that defendant's use of salt at the Proving Grounds was legally authorized, that plaintiffs failed to state a claim for recovery of response activity costs under NREPA, and that plaintiff failed to adequately allege fraud and trespass.

The trial court granted defendant's motion for summary disposition of plaintiffs' trespass claim pursuant to the parties' stipulation, but denied defendant's motion in all other respects. The trial court held that plaintiffs' claims were not barred by the statute of limitations and stated in part:

Plaintiffs [do] not necessarily dispute that the statute of limitation could bar their claims, however, they argue that defendant[] engaged in a continuous concerted and systematic attempt to conceal that contamination and that the statute of limitations therefore must be tolled under MCL 600.5855, until defendant admitted it was the source of contamination. As we see here today defendant by counsel has not admitted that Old GM or New GM is the source of the contamination. Thus, I do find that the plaintiffs' claim – claims are timely in that regard with reference to the statute of limitations.

The trial court also rejected defendant's additional arguments for summary disposition, and thereafter entered an order denying in part the motion for summary disposition. After plaintiffs were deposed during discovery, defendant again moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that plaintiffs' depositions produced information negating plaintiffs' claims. Defendant also requested that the trial court rule on the bases for summary disposition asserted in defendant's first motion for summary disposition that the trial court had not specifically ruled upon. The trial court denied the motion, finding material issues of fact and holding that summary disposition was not warranted at that time.

This Court granted defendant's applications for leave to appeal the trial court's orders denying in part its motion for summary disposition and denying its renewed motion for summary disposition, and also granted defendant's motion to consolidate the two appeals.[3]

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo issues involving the proper interpretation of statutes. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred by the statute of limitations. *Frank v Linkner*, 500 Mich 133, 140; 894 NW2d 574 (2017). When reviewing a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7), this Court considers all documentary evidence in the light most favorable to the nonmovant, *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), and accepts the complaint as factually accurate unless it is specifically contradicted by affidavits or other documentation. *Frank*, 500 Mich at 140. If there is no factual dispute, whether a claim is barred by the statute of limitations is a question of law for the Court. *RDM Holdings*, 281 Mich App at 687.

A motion for summary disposition pursuant to MCR 2.116(C)(8) "tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*.

### B. STATUTE OF LIMITATIONS

Defendant contends that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(7) because plaintiffs' claims are barred by the statute of limitations and are not saved by the fraudulent concealment tolling provision of MCL 600.5855. We agree that Counts I and II of plaintiffs' Second Amended Complaint are barred by the statute of limitations.

A statute of limitations is a " 'law that bars claims after a specified period; specif[ically], a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued.' " *Frank*, 500 Mich at 142, quoting *Black's Law Dictionary* (10th ed) (alteration in

---

[3] *Moore v General Motors LLC*, unpublished order of the Court of Appeals, entered June 29, 2019 (Docket No. 348579); *Moore v General Motors LLC*, unpublished order of the Court of Appeals, entered June 29, 2019 (Docket No. 349727).

original).  The purpose of a statute of limitations is to protect a defendant from being compelled to defend against stale claims.  *Stephens v Dixon*, 449 Mich 531, 534; 536 NW2d 755 (1995).

To determine the applicable limitations period, a court considers the "gravamen of an action" from the complaint as a whole to determine the exact nature of the claim.  *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007).  Here, plaintiffs' Second Amended Complaint alleges violations of the NREPA arising out of the conduct of Old GM, violations of the NREPA arising out of the conduct of New GM, fraud, negligence, private nuisance, and public nuisance, and seeks injunctive relief and compensation for property damage.

With regard to plaintiff's claims under the NREPA, the period of limitations is established by MCL 600.5813.  See *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 24; 896 NW2d 39 (2016) (applying six-year limitation period of MCL 600.5813 to NREPA actions).  The applicable statute of limitations for plaintiffs' claims of damage to their property is MCL 600.5805, which provides:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

> (2) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.

Plaintiffs' claim of fraud is subject to the residual six-year limitations period of MCL 600.5813.  See *Citizens Ins Co of America v Univ Physician Group*, 319 Mich App 642, 651; 902 NW2d 896 (2017).  In addition, the parties in this case agreed to toll the limitations period as of July 1, 2016.  Thus, plaintiffs' common law claims, with the exception of fraud, are barred by the statute of limitations if they accrued before July 1, 2013, while plaintiffs' statutory claims and fraud claim are barred if they accrued before July 1, 2010.

To determine whether plaintiffs timely filed their complaint requires ascertaining when the plaintiffs' claims accrued for purposes of determining a starting point for the limitations period. The time of accrual for claims subject to the limitations period of MCL 600.5805(2) is defined by MCL 600.5827, which provides that the limitations period begins to run "from the time the claim accrues" and that "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."  See also *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 388; 738 NW2d 664 (2007).  Interpreting this language, our Supreme Court in *Trentadue* explained that "the wrong is done when the plaintiff is harmed rather than when the defendant acted."  *Id*. (quotation marks, citation, and alteration omitted).  Our Supreme Court has also stated that "[o]nce all of the elements of an action for . . . injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run.  Later damages may result, but they give rise to no new cause of action, nor does the statute of limitations begin to run anew as each item of damage is incurred."  *Connelly v Paul Ruddy's Equip Repair & Serv Co*, 388 Mich 146, 151; 200 NW2d 70 (1972).

More recently, in *Frank* our Supreme Court explained that determination of the date of accrual requires determination of when plaintiffs "first incurred the harms they assert." *Frank*, 500 Mich at 150. "The relevant 'harms' for that purpose are the actionable harms alleged in a plaintiff's cause of action." *Id*. "Additional damages resulting from the same harm do not reset the accrual date or give rise to a new cause of action." *Id*. at 155. In *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 183; 931 NW2d 539 (2019), our Supreme Court again explained that "a claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results," *id*., and that the date of the wrong is "the date on which the defendant's breach harmed the plaintiff, as opposed to the date on which defendant breached his duty." *Id*., quoting *Frank*, 500 Mich at 147.

In *Henry v Dow Chemical Co*, 501 Mich 965 (2018), a case involving the presence of dioxin in the soil of the plaintiffs' properties allegedly caused by the defendant's dumping of dioxin into the Tittabawassee River, our Supreme Court held that the plaintiffs were harmed when the dioxin allegedly was placed in the soil of their properties, and that the period of limitations therefore began to run from the date that "wrong" occurred. *Id*.

Most recently, our Supreme Court in *Mays v Governor*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket Nos. 157335-7; 157340-2) again discussed when a claim accrues under MCL 600.5827. In that case, the plaintiffs filed an action in the Court of Claims alleging damages arising from the Flint water crisis, and seeking to hold the state, certain government officials, and certain state departments liable. With regard to the plaintiffs' claims of inverse-condemnation of their properties, the defendants moved for summary disposition arguing that the plaintiffs had failed to comply with the statutory notice requirement of MCL 600.6431 by filing either the claims or notice of the intention to file the claims within one year of the accrual of the claims and, regarding property damage, within six months following the event giving rise to the cause of action. *Id*. at slip op 17-18. The Court of Claims denied summary disposition of the inverse-condemnation claims, and this Court affirmed that determination.

Our Supreme Court in *Mays* expressly affirmed the holding of the Court of Appeals with regard to the plaintiffs' inverse-condemnation claims.[4] The Court distinguished the facts of that case from those of *Henry*, concluding in *Mays* that questions of fact remained regarding when the plaintiffs sustained their alleged injuries and when each plaintiff's claim accrued. *Id*. at slip op 20-21, 35. The Supreme Court's opinion in *Mays*, however, does not purport to overturn either *Henry* or *Trentadue*, see *id*. at slip op 17-21, and in the lead opinion of *Mays* Justice Bernstein summarizes, echoing *Frank*, that "[t]hus, determining the time when plaintiffs' claims accrued requires us to determine when plaintiffs were *first* harmed." *Id*. at slip op. 18 (emphasis added).

In this case, similar to the facts of *Henry*, the harm alleged is the presence of chloride and excessive salt in the water under plaintiffs' properties. Applying the reasoning of *Henry* to this case, and in accordance with the principles articulated in *Trentadue*, *Frank*, and *Mays*, plaintiffs' claims accrued when they allegedly were first harmed. Here, plaintiffs allege that defendant polluted plaintiffs' water; the wrong occurred not when defendant allegedly dumped the

---

[4] In all other respects, the Supreme Court affirmed the opinion of this Court by equal division. *Mays*, ___ Mich at ___ (BERNSTEIN, J.); slip op at 4.

-6-

contaminants, nor when the damage resulted, but when plaintiffs first were harmed by the contaminants reaching their groundwater. The applicable periods of limitation therefore began to run from the date of that "wrong."

## 1. COUNTS I & II

In Counts I and II of plaintiffs' Second Amended Complaint, plaintiffs seek to hold New GM liable under the NREPA (including claims under Michigan's EPA) based upon the alleged releases of the sodium and chloride by Old GM. In the factual allegations of their Second Amended Complaint plaintiffs allege that the chemicals were present in the water under their properties at least by 1997. Defendant argues that because plaintiffs assert that the contaminants reached their groundwater before July 1, 2010 (the earliest date on which the claim could accrue and still be actionable), these counts are barred by the statute of limitations.

The burden of proving that a claim is barred by the statute of limitations rests with the party asserting that defense. *Prins v Michigan State Police*, 291 Mich App 586, 589; 805 NW2d 619 (2011). Here, defendant correctly asserts that plaintiffs allege in their Second Amended Complaint that contamination by Old GM reached plaintiffs' groundwater in the 1990s. Any claim against Old GM based upon the alleged contamination accrued at the time of that harm, and the statute of limitations began to run at that point. Defendant therefore accurately argues that plaintiffs' claims based upon the conduct of Old GM in this case are barred by the statute of limitations,[5] and it is entitled to summary disposition of Counts I and II of the Second Amended Complaint under MCR 2.116(C)(7). See *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014) (Summary disposition under MCR 2.116(C)(7) is appropriate when the undisputed facts demonstrate that the plaintiff's claim is barred by the statute of limitations).

## 2. FRAUDULENT CONCEALMENT

Plaintiffs argue that the statute of limitations does not bar their claims because it is tolled by defendant's fraudulent concealment of its liability for the claims, contrary to MCL 600.5855, which provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on this claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of

---

[5] Pursuant to the decision of the bankruptcy court, New GM can be liable for damages to plaintiffs for failure to comply with statutorily-based environmental laws caused by the conduct of New GM, or as remediation for conduct of Old GM. But for purposes of the statute of limitations, plaintiffs' claims must arise from conduct of New GM, because the initial contamination by Old GM predates the cut-off date for accrual under the statute of limitations.

the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

This provision permits the tolling of a statutory limitations period when a defendant fraudulently conceals the existence of a claim. *Mays*, 323 Mich App at 39. Under the statute, the plaintiff has two years within which to bring the claim from the time he or she discovers, or reasonably should have discovered, the claim if the plaintiff demonstrates fraudulent concealment by the defendant. *Frank*, 500 Mich at 148. Our Supreme Court has observed that this statute "provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed." *Trentadue*, 479 Mich at 391.

This Court has defined fraudulent concealment as "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." *Doe v Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich App 632, 642; 692 NW2d 398 (2004) (quotation marks and citation omitted). The alleged concealment must involve conduct designed to prevent the recognition of a cause of action. *Id*. Mere silence ordinarily is insufficient to establish fraudulent concealment. *Reserve at Heritage Village Ass'n v Warren Fin Acquisition, LLC*, 305 Mich App 92, 123; 850 NW2d 649 (2014) "[T]here must be concealment by the defendant of the existence of a claim or the identity of a potential defendant," *McCluskey v Womack*, 188 Mich App 465, 472; 470 NW2d 443 (1991). In addition, to successfully assert the fraudulent concealment exception, a plaintiff "must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment," and must demonstrate that the defendant made affirmative acts or misrepresentations designed to prevent discovery. *Mays*, 323 Mich App at 39.

To take advantage of the tolling provision, however, the plaintiff must be reasonably diligent in investigating and pursuing the cause of action. See *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Inst*, 266 Mich App 39, 48; 698 NW2d 900 (2005). Fraudulent concealment does not toll the running of the limitation period if the plaintiff could have discovered the fraud, including if the fraud could have been discovered from public records. See *id*. at 45 n 2. If the plaintiff was aware of a possible cause of action, he or she was sufficiently apprised of the cause of action for purposes of the fraudulent concealment statute. *Doe*, 264 Mich App at 643 "The fraudulent concealment which will postpone the operation of the statute must be the concealment of the fact that plaintiff has a cause of action. If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute. . . ." *Id*. at 646-647 (quotation marks and citation omitted).

In this case, plaintiffs contend that the limitations periods were tolled by fraudulent concealment until October 13, 2014, when defendant acknowledged potential responsibility for the contamination. The trial court concluded:

> . . . [plaintiffs] argue that defendant[] engaged in continuous concerted and systematic attempts to conceal that contamination and that the statute of limitations therefore must be tolled under MCL 600.5855, until defendant admitted it was the source of contamination. As we see here today defendant by counsel has not admitted that Old GM or New GM is the source of the contamination. Thus, I do

find that the plaintiffs' claim – claims are timely in that regard with reference to the statute of limitations.

Defendant argues that merely denying that it contaminated the groundwater is not the equivalent of fraudulently concealing that it contaminated the groundwater. We agree. Although the Second Amended Complaint alleges actions by Old GM to mislead investigations of the source of the groundwater contamination, it does not allege affirmative acts or misrepresentations by New GM that were designed to prevent discovery, alleging only that New GM denied and failed to admit that it was the source of the groundwater contamination. In addition, plaintiffs allege facts that indicate that the contamination was known to the public and the developer of the properties by at least the 1990s. Because plaintiffs failed to allege specific acts taken by defendant that are the "employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action," *Doe*, 264 Mich App at 642, and because the alleged fraud could have been discovered with reasonable diligence, their complaint does not adequately allege fraudulent concealment. The statute of limitations with regard to Counts I and II therefore was not tolled due to fraudulent concealment.

## C. NOTICE OF THE NREPA CLAIM

Defendant also contends that plaintiffs' claims under the NREPA fail because plaintiffs failed to provide notice as required by MCL 324.20135 and thereby deprived the trial court of jurisdiction over that claim. We agree.

The contention that a claim is jurisdictionally defective is typically brought under MCR 2.116(C)(4). A motion brought under MCR 2.116(C)(4) tests the trial court's subject matter jurisdiction, and this Court determines whether the pleadings demonstrate that the defendant was entitled to judgment as a matter of law. *McKenzie v Dep't of Corrections*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347061); slip op at 2.

Plaintiffs allege in Counts VIII and IX of their Second Amended Complaint that defendant violated the NREPA. The purpose of Part 201 of the NREPA, of which MCL 324.20135 is a part, is "to provide for appropriate response activity to eliminate unacceptable risks to public health, safety, or welfare, or to the environment from environmental contamination at facilities within the state." MCL 324.20102(c); *Tennine Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 8; 888 NW2d 267 (2016). Under MCL 324.20135(3)(a), a plaintiff must give written notice of the intent to file a suit to the Michigan Department of Environmental Quality (MDEQ), the attorney general, and the proposed defendants at least 60 days before filing a complaint.

Plaintiffs allege in their Second Amended Complaint that they provided notice to defendant, the MDEQ, and the attorney general on November 29, 2017, and filed their Complaint the next day on November 30, 2017. Plaintiffs argue that the purpose of the notice provision was nonetheless fulfilled because the notice was provided to the MDEQ and the attorney general in ample time to permit those entities to bring the suit before the filing of the Second Amended Complaint on July 18, 2018.

The statute, however, is clear and unambiguous that an action "shall not be filed under subsection (1)(a) or (b)" unless "[t]he plaintiff has given at least 60 days' notice in writing of the plaintiff's intent to sue, the basis for the suit, and the relief to be requested" to the MDEQ, the attorney general, and the proposed defendants. MCL 324.20135(3)(a). This Court has referred to

the 60-day notice provision of subsection (3)(a) as a condition that must be met before a private civil action may be filed under MCL 324.20135. See *Cairns v City of East Lansing*, 275 Mich App 102, 114; 738 NW2d 246 (2007). Although plaintiffs argue that the notice given was adequate as a practical matter because the Second Amended Complaint was not filed until months after the notice was given, plaintiffs point to no authority that substantial compliance with the statute is adequate to fulfill the notice provision. Because plaintiffs failed to provide notice as required by MCL 324.20135, plaintiffs were not able to sue under the statute, and defendant was therefore entitled to summary disposition of plaintiffs' claims under the NREPA.[6]

## D. THE REMAINING COUNTS

In the remaining counts of the Second Amended Complaint alleging fraud, nuisance, and negligence, plaintiffs seek to hold New GM liable for its own conduct after it purchased the Proving Grounds. Plaintiffs allege that since it purchased the Proving Grounds on July 10, 2009, New GM has been dumping contaminants at the Proving Grounds that are migrating to plaintiffs' groundwater.[7]

Plaintiffs do not specifically allege when contaminants from New GM reached their groundwater for the first time. To successfully allege a claim that is not barred by the statute of limitations, plaintiffs in this case must allege that the contaminants released by New GM reached their groundwater for the first time after July 1, 2010, for purposes of their claims of fraud and after July 1, 2013, for their claims of negligence and nuisance. Because plaintiffs have not done so, plaintiffs have failed to state claims for fraud, negligence, and nuisance, and defendant is entitled to summary disposition of those claims under MCR 2.116(C)(8).[8]

Defendant also contends that the plaintiffs' Second Amended Complaint does not adequately allege fraud, and therefore fails to state a claim for fraud under MCR 2.116(C)(8). We agree. Actionable fraud, also known as fraudulent misrepresentation, requires that (1) the defendant made a material representation, (2) the representation was false, (3) at the time the

---

[6] Because we conclude that defendant is entitled to summary disposition of plaintiffs' claims under the NREPA, including its claims under Michigan's EPA, we decline to reach defendant's additional arguments regarding this claim that plaintiffs lack standing, that defendant's releases of contaminants were permitted, and that plaintiffs failed to allege their cost recovery claims.

[7] With regard to common law tort liability for alleged contamination of plaintiffs' groundwater, the bankruptcy court held that its Sale Order does not preclude plaintiffs' potential causes of action against New GM with regard to contamination that migrated from the Proving Grounds after July 10, 2009 (the date New GM purchased the Proving Ground), whether by conduct of New GM after that date or by conduct of Old GM before that date. But, as noted, for purposes of the statute of limitations, plaintiffs' claims must arise from conduct of New GM, because the initial contamination by Old GM predates the cut-off date for accrual under the statute of limitations.

[8] The defendant has the burden of proving the facts that establish that a claim is barred by the statute of limitations. *Stephens*, 307 Mich App at 227. Thus, while plaintiffs' failure to allege when the harm occurred from New GM's conduct means they have failed to state a claim under MCR 2.116(C)(8), it does not establish that their claims are barred by the statute of limitations.

defendant made the representation, the defendant knew it was false or made it recklessly, without knowing whether it was true, and as a positive assertion, (4) the defendant intended that the plaintiff rely upon the representation, (5) the plaintiff acted in reliance upon the representation, and (6) the plaintiff suffered damage. *Titan Ins Co*, 491 Mich at 555. The plaintiff must also establish that reliance upon the defendant's representations was reasonable. *Foreman v Foreman*, 266 Mich App 132, 141-142; 701 NW2d 167 (2005).

Silent fraud, also known as fraudulent concealment, requires that (1) the defendant suppressed a material fact, (2) which the defendant had a duty to disclose, and (3) the defendant concealed the material fact with the intent to defraud. See *Titan Ins Co*, 491 Mich at 557. A claim for fraud must be pleaded with particularity, addressing each element, MCR 2.112(B)(1); *Stephens*, 307 Mich App at 229-230, although intent and knowledge may be alleged generally. MCR 2.112(B)(2).

In Count X of plaintiffs' Second Amended Complaint, plaintiffs allege that (1) defendant knew that the contamination was migrating from the Proving Grounds as of the day they took possession, (2) defendant failed to notify plaintiffs, (3) defendant denied that the source of the contamination was the Proving Grounds, (4) defendant made positive assertions that the source of the contamination was not the Proving Grounds, (5) defendant made the assertions with the intent to defraud or reckless disregard for the truth, and (6) plaintiff suffered damages as a result of defendant's fraud. The Second Amended Complaint fails, however, to allege that plaintiffs acted in reliance upon defendant's representations, and thus is missing an element necessary to state a prima facie case of fraud. Plaintiffs also fail to allege that defendant had a duty to disclose the material facts allegedly suppressed, and thus is missing an element necessary to state a prima facie case of silent fraud. The trial court therefore erred by failing to grant defendant summary disposition of plaintiffs' fraud claim.

When a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court is required to give the nonmovant an opportunity to amend its pleadings as provided by MCR 2.118, unless the evidence demonstrates that amendment is not justified. MCR 2.116(I)(5); see also *Jawad A. Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 209; 920 NW2d 148 (2018). Leave to amend is to be freely granted when justice requires, MCR 2.118(A)(2), and should be denied only for particularized reasons, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility. *Shah*, 324 Mich App at 208. On remand, the trial court should permit plaintiffs an opportunity to seek to amend their complaint to cure the deficiencies that otherwise entitle defendant to summary disposition of these counts.

We reverse the order of the trial court denying defendant summary disposition of Counts I and II of plaintiffs' Second Amended Complaint because those counts are barred by the statute of limitations. We also reverse the order of the trial court denying defendant summary disposition of Counts VIII and IX of the Second Amended Complaint seeking relief under the NREPA because plaintiffs did not comply with the notice provisions of the statute. We also reverse the order of the trial court regarding the remaining claims (Counts X, XI, XIII, and IV, being fraud, negligence, private nuisance, and public nuisance), and remand those counts to the trial court to permit

plaintiffs to move to amend their complaint to cure the deficiencies that otherwise entitle defendant to summary disposition of these counts.

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens